UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No. 21-CR-268(2)(SRN/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **DETENTION ORDER** |
| v. | ) |
| | ) |
| MIA FAYE SUMNER, | ) |
| | ) |
| Defendant. | ) |

A hearing on the motion of the United States for detention pending trial was held by Zoom videoconference technology before the undersigned United States Magistrate Judge on December 15, 2021. The United States was represented by Assistant United States Attorney Deirdre Aanstad. The defendant was represented by Shannon Elkins, Esq. Ms. Mia Faye Sumner, the defendant, was present by Zoom from the Douglas County Detention Facility in Superior, Wisconsin.

After an explanation from the Court of her option to have an in-person hearing in the near future, Ms. Sumner consented to the hearing going ahead by Zoom.

Without objection from the defense, the United States introduced, for purposes of this hearing only, Government Exhibits One (22 pages of text messages sent to, or received by, Ms. Sumner) and Two (a recording of a jail call). Also without objection, and also for purposes of this hearing only, the defense introduced Defense Exhibits One and Two, medical and treatment records. Neither the defense nor the United States called witnesses.

Before the December 15 hearing, Pretrial Services provided the Court, the defense, and the prosecution with a Bond Report recommending detention.

The motion of the United States is **GRANTED** because there are presently no alternatives to detention that will reasonably assure the safety of the community and prevent flight.

## THE INDICTMENT

On December 9, 2021, a grand jury of the District of Minnesota returned an indictment charging Ms. Sumner and her co-defendant, Alexia Ga Gi Gay Mary Cutbank, with: Second Degree Murder, in violation of 18 U.S.C. §§ 1111, 1151, and 1153(a); Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 113(a)(3), 1151, 1153(a), and 2; and Assault Resulting in Great Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1151, 1153(a), and 2. The Indictment also sets forth forfeiture allegations.

The victim of the murder is identified in the Indictment only by the initials "D.A.J.," while the victim in the two assault counts is identified only by the initials "T.B.S." The Indictment gives few details about the manner in which the murder was allegedly perpetrated. The only facts one can glean from the Indictment about how these crimes were carried out is that in Count Two, the assault is alleged to have been committed with "a dangerous weapon, namely a firearm," and the forfeiture allegations seek forfeiture of firearms and ammunition. Otherwise, the Indictment just lists the elements of each offense and specifies a date and place the crimes were allegedly committed – August 12, 2019, on the Red Lake Indian Reservation.

## LEGAL STANDARD

A person charged with a crime may be detained pending trial only if "after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Detention is appropriate in limited circumstances, specifically if, at the "hearing pursuant to the provisions of subsection (f)," the prosecution proves by clear and convincing evidence that release will result in danger to the community or by a preponderance of the evidence that release will pose a serious risk of flight, and that no condition or combination of conditions less restrictive than detention will obviate these dangers. *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (*quoting United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc)).

Title 18 U.S.C. § 3142(g) lists the factors a court is to consider when making a detention decision. The factors most applicable to this case are:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, or involves . . . a firearm. . . .

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including-

    (A)   The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

## ANALYSIS

Although it was not discussed at either the Initial Appearance or the Detention Hearing, the Court first considers the threshold issue of the Government's basis for seeking detention. Pursuant to 18 U.S.C. § 3142(f)(1)(A), the Government may seek detention if a case involves a crime of violence. Because the charged offenses in this case are murder and assault, the Court finds this condition satisfied.

Turning to the question of Ms. Sumner's pretrial detention, the Court finds the question close, due to the limited information provided to the Court. As noted above, the Indictment contains very few facts, and the Government proffered no further evidence at the Detention Hearing about the circumstances of the alleged murder and assault. While the Court can therefore identify the *nature* of the offenses as murder and assault, all that the Court can venture about the *circumstances* of the offense is that a firearm was used and that there were two victims, one of whom died and the other of whom suffered great bodily injury. The Court also cannot say anything about the weight of the evidence, other than that the grand jury necessarily found it was at least probable cause. The serious nature of the offenses, that there were multiple victims, and the use of a firearm are all strong factors favoring detention.

The Government did proffer that Ms. Sumner has a few past convictions and characterized Ms. Sumner's criminal history as minor. The Bond Report bears this out, and the Court finds that Ms. Sumner's criminal record is modest, consisting of mostly minor offenses, and does not support pretrial detention, except for two notations that Ms. Sumner

failed to appear for court as scheduled in the past. The Government also did not proffer evidence concerning Ms. Sumner's chemical dependency. The defense proffered that the birth of a child to Ms. Sumner one year ago has motivated Ms. Sumner to seek treatment and referred to statements in the Defense Exhibits to support this. The Bond Report states that Ms. Sumner began using alcohol and cannabis at the age of 13 and is now a daily user of cannabis. She began using methamphetamine at age 16; she is now an intravenous user of methamphetamine who last consumed methamphetamine, according to the Bond Report, a month or two ago. (But this statement may be a minimization, as described below).

Almost all of the evidence proffered by the Government at the Detention Hearing consisted of text messages sent or received by Ms. Sumner when she was confined at the Douglas County Detention Center between December 9 (the day Ms. Sumner was arrested on the Indictment) and December 14 (the day before the Detention Hearing). The Court has reviewed the 22 pages of text messages in Government Exhibit One. The majority of these texts relate to Ms. Sumner arranging childcare for her one-year-old daughter.

However, some of the texts are concerning; for example, a text on December 10, "i told them i smoke weed n drink occasionally but i dont use meth anymore lol," which the Government contends – and the Court agrees – is most plausibly construed as an admission by Ms. Sumner that she was untruthful about her methamphetamine use when she was interviewed by Pretrial Services. Also concerning is that many of these texts are with individuals who were identified by the Government at the hearing as serving sentences in the Minnesota Department of Corrections for serious, violent crimes, up to and including murder. Ms. Sumner's boyfriend is Montana Cutbank, who is incarcerated for murder. Mr.

Cutbank is the brother of Alexia Cutbank, who is Ms. Sumner's co-defendant in this federal murder case. Apparently, Ms. Sumner was also texting with other persons who are also incarcerated following conviction. The mother of Alexia Cutbank and Montana Cutbank is Mary Wenell, with whom Ms. Sumner texted more than anyone else, and who is providing childcare to Ms. Sumner's infant daughter. None of the texts contain threats against witnesses, nor does Ms. Sumner, in any of the texts, inculpate herself in the murder and assault alleged in the Indictment; to the contrary, in several of them she asserts her innocence of the Indictment's charges. That said, there are a number of texts in which Ms. Sumner and the person with whom she is communicating agree on the importance of not snitching.

Ms. Sumner's community ties appear to be exclusively or heavily persons involved in criminal activity as described in the immediately preceding paragraph. Ms. Sumner's mother died from suicide when Ms. Sumner was ten. She has only Facebook contact with her father, who lives in Mexico, and stepfather, who lives in Minnesota. She has only infrequent contact with her seven half-sisters.

In consultations between the Court and the Pretrial Services Office, no chemical dependency treatment program has yet been identified that would provide the level of care Ms. Sumner needs, while also being secure enough to prevent the risk her release poses of flight and danger to the community.

The Court concludes that no condition or combination of conditions will reasonably assure the safety of the community or the appearance of Ms. Sumner at future court appearances. The most important factors in the Court's detention decision are the violent

6

nature of the crimes charged, that there were multiple victims, that a firearm was used, and Ms. Sumner's apparently severe chemical dependency, which makes it difficult for her to conform her behavior to the requirements of pretrial release on conditions. The Court also considered, under the heading of community ties, Ms. Sumner's lack of a healthy, law-abiding peer group, and the fact that many of the people to whom she reached out after being arrested on federal charges were incarcerated, violent felons. The two failure-to-appear incidents on Ms. Sumner's criminal history were considered, but eventually, because there were only two of them and they both related to the same gross misdemeanor drug case, the Court gave them no weight.

Based on the files, records, and proceedings in this case, **IT IS ORDERED THAT:**

1. The motion of the United States for detention of Defendant Mia Faye Sumner is **GRANTED;**
2. Ms. Sumner is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;
3. Ms. Sumner shall be afforded reasonable opportunity to consult privately with her lawyer; and

4. Upon order of a court of the United States or written request by the United States Attorney, the person or persons in charge of the corrections facility or facilities in which Ms. Sumner is confined shall deliver her to the United States Marshal for the purpose of appearance in connection with a court proceeding.

Dated: December 16, 2021                     __*s/ John F. Docherty*_____
                                             John F. Docherty
                                             United States Magistrate Judge